IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASHLEY LESLIE,<br><br>              Plaintiff,<br><br>   vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC. and TRANS UNION LLC,<br><br>              Defendants. | CIV. NO. 21-00334 JMS-RT<br><br>ORDER DENYING DEFENDANT TRANS UNION'S AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 73 |

**ORDER DENYING DEFENDANT TRANS UNION'S AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 73**

**I. INTRODUCTION**

In this Fair Credit Reporting Act ("FCRA") case, Defendant Trans Union LLC has filed an Amended Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal of all claims asserted by Plaintiff Ashley Leslie. ECF No. 73. The Motion is based on two grounds: (1) Plaintiff lacks standing under Article III of the Constitution; and (2) Plaintiff's allegations fail to state a "reasonable procedures" claim under the 15 U.S.C. § 1681e(b) of the FCRA. *See* ECF No. 73-1. Plaintiff filed an Opposition to the Motion, ECF No. 84, and Trans Union filed a Reply, ECF No. 87. The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

Considering that a challenge to constitutional standing is most properly brought under Federal Rule of Civil Procedure 12(b)(1), the court construes Trans Union's challenge to Article III standing as a Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."); *see also Howell v. Leprino Foods Co.*, 2020 WL 704778, at *5–6 (E.D. Cal. Feb. 12, 2020) (construing challenge to standing in a Rule 12(c) motion as a challenge brought under Rule 12(b)(1)); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 567 (N.D. Cal. 2013) (same).

With that clarification, the court DENIES Trans Union's Motion to Dismiss for Lack of Subject Matter Jurisdiction because Plaintiff's allegations establish the three elements of Article III standing. And the court DENIES Trans Union's Motion for Judgment on the Pleadings because Plaintiff's allegations state facts that are sufficient to support a cognizable "reasonable procedures" claim under the FCRA.

## II. DISCUSSION

The parties are familiar with the factual record and the standards applicable to motions under Rules 12(b)(1) and 12(c). The court thus proceeds

directly to the two issues raised by Trans Union, discussing only the facts necessary to rule on those issues and to set the ruling in context.

**A.      Article III Standing**

Trans Union contends that Plaintiff lacks constitutional standing because she was not harmed by Trans Union's reporting of the Wells Fargo account as an outstanding debt rather than a debt discharged in bankruptcy.  ECF No. 73-1 at PageID ## 856–60.  Federal courts' judicial power is limited to "Cases" or "Controversies."  U.S. Const. art. III § 2.  That limitation requires a plaintiff to demonstrate "the irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Standing requires three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560).

The first element of the standing inquiry—whether there is an "injury in fact"—requires an injury that is both "concrete and particularized," and is "actual or imminent, not conjectural or hypothetical." *Id.* at 339.  The second element—whether the alleged injury is fairly traceable to the defendant's actions—is often called the "causation" requirement and demands merely "a line of causation between defendants' action and their alleged harm that is more than

3

attenuated." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation and internal quotation marks omitted) (noting that the burden for proving the causation requirement is lower than proving proximate cause); *see also Bennett v. Spear*, 520 U.S. 154, 168–71 (1997) (stating that the burden for sufficiently pleading the causation requirement "is relatively modest").

When challenging standing at the pleading stage, a defendant may make a "facial" or "factual" attack against the plaintiff's jurisdictional allegations. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial" attack accepts the allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* The district court resolves a facial challenge as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations establish the three elements of standing. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013); *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018). In a "factual" attack, the defendant disputes the truth of allegations that would otherwise invoke federal jurisdiction. *Meyer*, 373 F.3d at 1039. The court need not presume the truthfulness of the plaintiff's allegations in a factual attack. *Id.*

Trans Union does not specify whether its jurisdictional challenge is facial or factual. *See* ECF Nos. 73-1 and 87. Trans Union certainly challenges the

4

sufficiency of Plaintiff's allegations. *See, e.g.*, ECF No. 73-1 at PageID # 858 ("It is not enough (much less credible) for Plaintiff to allege she received 'less favorable credit terms' and was denied credit by Discover without connecting such claims to Trans Union's reporting of the [Wells Fargo] Account . . . ."). Trans Union also appears to dispute the truthfulness of Plaintiff's allegations. *See, e.g.*, *id.* at PageID # 856 ("Plaintiff's claims still fail for lack of standing because she could not have been damaged by Trans Union's reporting of the Account as satisfactory rather than included in bankruptcy."); *id.* at PageID # 859 ("[I]t defies common sense to conclude that a [credit reporting agency's] reporting of an account as satisfactory caused any damage." (analogizing to *Stagger v. Experian Info. Sols., Inc.*, 2022 WL 632838, at *2 (N.D. Ill. Feb. 9, 2022))).

But construing Trans Union's challenge as a factual challenge is a futile exercise because Trans Union provides no extrinsic evidence in support of its challenge. *See Meyer*, 373 F.3d at 1039 ("jurisdictional challenge was a factual attack where it 'relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings'" (summarizing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003))). In other words, even if the court were to disregard the presumption that Plaintiff's allegations are truthful, Trans Union fails to provide evidence that contradicts those allegations or that otherwise shifts the burden of production to Plaintiff. *Cf. Savage v. Glendale*

5

*Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."). Trans Union's challenge instead consists of legal arguments based on case law and common knowledge of credit reporting—a challenge most appropriately handled as a facial challenge. *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (holding that because the defendant did not introduce any evidence contesting any of the plaintiff's allegations, the defendant asserted a facial challenge).

Trans Union's facial challenge fails because Plaintiff's allegations are sufficient to invoke federal jurisdiction. The Complaint alleges that Trans Union's inaccurate reporting of the Wells Fargo account was at least a partial cause of Plaintiff's being "extend[ed] less favorable credit terms" by financial institutions and being "denied a Discover [credit] card." ECF No. 1 at PageID # 16, ¶ 78; *see also id.*, ¶ 80 (alleging, more generally, that Plaintiff was harmed through "a decreased credit score" and "lower overall creditworthiness").[1] Those alleged

---

[1] The inaccurate reporting also allegedly caused Plaintiff to suffer emotional distress, including anger, embarrassment, and anxiety. ECF No. 1 at PageID # 17, ¶ 81. The status of emotional harm as an injury in fact under Article III is an open question in the Ninth Circuit following the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). *See Samano v. LVNV Funding, LLC*, 2022 WL 1155910, at *3 (E.D. Cal. Apr. 19, 2022)
(continued . . .)

harms are actual, concrete, and particularized. *See Del Llano v. Vivint Solar Inc.*, 2018 WL 656094, at *6 (S.D. Cal. Feb. 1, 2018) ("[C]laims of harm that could have flowed from this drop in credit score, i.e.[,] impacting Plaintiff's ability to purchase a home or apply for a mortgage, would have been sufficient to confer standing at the pleading stage."); *cf. Norman v. Bosak Motors of Burns Harbor LLC*, 2021 WL 4749617, at *3 (N.D. Ind. Oct. 12, 2021) (applying *TransUnion*) ("[Plaintiff] has not alleged any injury that she suffered as a result of her credit score. She claims that 'the actions of [defendant] [sic] has [sic] taken my credit score way below approval status.' . . . However, she makes no allegations and has not submitted any evidence of any actual injury in fact she has suffered [because of the decreased credit score]." (citation omitted)).

And, as plausibly alleged in the Complaint, each of those alleged harms is fairly traceable to Trans Union's inaccurate reporting of the Wells Fargo account. *Cf. Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the

---

("The Ninth Circuit has not yet considered whether Plaintiff's allegations of intangible harm—emotional distress, loss of personal reputation, and loss of personal time—without more, suffice as concrete injury-in-fact for standing purposes in a FDCPA case in view of *TransUnion*."). Regardless, because the Complaint alleges other harms that are injuries in fact, and because those other harms are the bases for monetary damages under the FCRA—the same remedy sought for the alleged emotional harms—the court need not reach the question of whether Plaintiff's alleged emotional harms constitute injuries in fact. *See TransUnion*, 141 S. Ct. at 2208 ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").

burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").[2]

Trans Union argues that its inaccurate reporting of the Wells Fargo account as an outstanding, current (i.e., non-delinquent) debt actually improved Plaintiff's credit rating. *See* ECF No. 73-1 at PageID ## 856–60; ECF No. 87 at PageID # 953. That could be true, depending on how the evidence shakes out in this case. The evidence could show that Plaintiff's non-delinquent Wells Fargo debt was a positive factor in her credit rating (establishing reliability as a borrower). *See Stagger*, 2022 WL 632838, at *2. Alternatively, the evidence could show that the inaccurately reported debt decreased Plaintiff's credit rating because it adversely inflated her debt-to-income ratio (a factor influencing credit scores). *See id.* at *3. Or the evidence could show that regardless of the debt's effect on Plaintiff's credit score, the lenders named in the Complaint evaluated Plaintiff's Wells Fargo debt independently from her credit score and found that debt warranted an adjustment of lending terms unfavorable to Plaintiff.

---

[2] Trans Union does not specifically challenge the redressability element. The court has satisfied itself that if Plaintiff were to prevail on her claims, the alleged harms could be redressed by an award of damage under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) ("FCRA provides a private right of action against businesses that use consumer reports but fail to comply. If a violation is negligent, the affected consumer is entitled to actual damages. . . . If willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." (citation omitted)).

But the diversity of possible factual outcomes—more specifically, the possibility that Plaintiff's credit rating was actually benefited—is immaterial to the court's analysis at the *pleading* stage because the court must accept Plaintiff's plausible allegations as true when resolving Trans Union's facial challenge, and because Plaintiff plausibly alleges at least one factual outcome that harmed her— that the Wells Fargo debt negatively affected her credit rating through an inflated debt-to-income ratio.³ *See* ECF No. 1 at PageID ## 8–9, 16, ¶¶ 30–36, 78–80. Also immaterial is Trans Union's reliance on *Stagger*, a case in which the defendant credit-reporting agency successfully challenged the plaintiff's standing by "show[ing] through two credit reports, one containing the inaccuracy and the corrected report, that the inaccuracy actually increased [the plaintiff's] credit score." 2022 WL 632838, at *2; *see also id.* at *1 ("[Defendant] brings a factual challenge to standing."). Trans Union has not presented similar evidence in this Motion.

---

³ The Complaint can also be read as alleging that the named financial institutions considered the Wells Fargo debt independently from Plaintiff's quantitative credit score and decided to extend less favorable lending terms on the basis of that independent consideration. *See* ECF No. 1 at PageID # 7, ¶ 27 ("The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness *and* determines their FICO Scores." (emphasis added)); *id.* at PageID # 16, ¶ 78 ("Upon information and belief, all of the aforementioned institutions decided to extend less favorable credit terms to Plaintiff, based in part on Defendants' inaccurate credit reporting.").

9

In sum, Plaintiff plausibly alleges that she has suffered an injury in fact that is fairly traceable to Trans Union's inaccurate reporting and that is likely to be redressed by a favorable judicial decision. Trans Union presents no evidence contradicting Plaintiff's allegations. Plaintiff, therefore, has established Article III standing at this stage in the case.

**B.     Reasonable Procedures Claim Under the FCRA**

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco*, 551 U.S. at 52. One claim under the FCRA is a "reasonable procedures" claim pursuant to 15 U.S.C. § 1681e(b), which specifies that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 754–55 (9th Cir. 2018). "[T]he reasonableness of the procedures and whether the agency followed them [are] jury questions in the overwhelming majority of cases . . . ." *Wheeler v. Experian Info. Sols., Inc.*, 2022 WL 1315301, at *1 (9th Cir. May 3, 2022) (mem.) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332–33 (9th Cir. 1995)). Another claim under the FCRA is a "reasonable reinvestigation" claim pursuant to 15 U.S.C. § 1681i(a)(1)(A), which specifies that "in [the] case of [a notice of]

disputed accuracy" from a consumer, "the agency shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *Shaw*, 891 F.3d at 754–55.

Plaintiff asserts a reasonable-procedures claim, alleging that Trans Union failed to follow reasonable procedures when it inaccurately reported the Wells Fargo account as an outstanding debt. ECF No. 1 at PageID ## 2, 17–21. Trans Union contends that Plaintiff has failed to state a cognizable reasonable-procedures claim. *See* ECF No. 73-1 at PageID ## 852–56. Specifically, Trans Union argues that even if Plaintiff's allegations of inaccurate reporting are true, "that is not enough for Plaintiff to state a viable claim," because "Plaintiff must also show that Trans Union did not follow reasonable procedures to prevent inaccuracies." *Id.* at PageID # 855. Plaintiff has failed to make such a showing, according to Trans Union, especially given that Plaintiff's allegations suggest that Trans Union received the inaccurate information "from a source that it reasonably believes is reputable," i.e., Wells Fargo and/or the docket for Plaintiff's bankruptcy proceeding. *Id.*; ECF No. 87 at PageID ## 947–48. In other words, Trans Union argues that if it allegedly received inaccurate information regarding the Wells Fargo account from a "presumptively reliable source," it acted reasonably in

reporting that inaccurate information, despite not performing a precautionary accuracy check on that information. *See* ECF No. 87 at PageID # 951.

The problem with Trans Union's contentions is that Plaintiff does allege that Trans Union took unreasonable procedural actions leading up to the inaccurate reporting: Trans Union allegedly did not perform an accuracy check on information received from Wells Fargo, which Trans Union "knew from past experiences . . . furnished inaccurate information regarding discharged debts." ECF No. 1 at PageID # 15, ¶ 70. Alternatively, Wells Fargo communicated to Trans Union that Plaintiff's account had been discharged in bankruptcy, but Trans Union allegedly "rejected or otherwise overrode the [communication] they received." *Id.* at PageID ## 14–15, ¶ 69. And as a further alternative, assuming Wells Fargo did not furnish information to Trans Union, Trans Union allegedly extracted information from bankruptcy-court dockets and "failed to employ reasonable procedures to ensure [that] it properly update[d] consumer debts after a Chapter 7 Bankruptcy is discharged." *Id.* at PageID # 15, ¶ 70.

All three alleged alternatives are plausible, and all three involve actions by Trans Union that would be unreasonable as a procedural matter. First, it is unreasonable for a credit reporting agency to not "look beyond information furnished to [it] when . . . [that information] comes from an unreliable source." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239–40 (10th Cir. 2015)

(collecting cases). If Trans Union knew that Wells Fargo was an unreliable source of information—as alleged under the first alternative, which the court accepts as true at the pleading stage—then neglecting to corroborate that information constitutes a failure to follow reasonable procedures to ensure accurate reporting. *See id.*

In the second alleged alternative, under which Wells Fargo is *not* known to be an unreliable source, if Wells Fargo communicated to Trans Union that Plaintiff's account had been discharged and Trans Union ignored that communication, Trans Union would have failed to follow reasonable procedures to ensure accurate reporting, especially considering that Wells Fargo was itself the lender on the account. *See Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *8 (S.D.N.Y. Nov. 19, 2008) (concluding there was a genuine issue of material fact as to whether Experian had willfully violated § 1681e(b) when inaccurately reporting a mortgage loan because the evidence showed, *inter alia*, that Experian had "received a copied notification from [the mortgage lender] through E–OSCAR, which contained updated and corrected information" but "Experian did not use this information to update its credit report due to an Experian policy"); *Calvillo v. Experian Info. Sols., Inc.*, 2020 WL 1433521, at *10 (D. Nev. Mar. 23, 2020) (holding that the plaintiff stated a plausible claim that "Experian willfully violated § 1681e(b)," where the plaintiff alleged that Experian

13

had inaccurately reported a bankruptcy-discharge date by, *inter alia*, "disregard[ing] other information available to it from either its own data furnishers or the public bankruptcy records").

And third, if Trans Union did not receive information from Wells Fargo and instead determined outstanding-debt status from the docket report in Plaintiff's bankruptcy case, Plaintiff plausibly alleges that Trans Union failed to follow reasonable procedures in making that determination for the following reasons: Trans Union assumed that the Wells Fargo account—a pre-petition debt—would survive a bankruptcy-discharge order when the survival of a pre-petition debt is rare; Trans Union treated the Wells Fargo account as being reaffirmed despite the absence of an "explicitly identified" "reaffirmation agreement[]" on the docket; and Trans Union failed to consult other sources, e.g., "furnishers of account/tradeline information," to resolve ambiguities in the docket report concerning the Wells Fargo account. *See* ECF No. 1 at PageID ## 9–10, ¶¶ 37–42. *Cf. Wheeler*, 2022 WL 1315301, at *1 (reversing and remanding a district court decision[4] that had dismissed a reasonable-procedures claim on the basis that Experian complied with a preexisting injunction specifying that it should *not* treat pre-petition debts "reporting in current status" as being discharged)

---

[4] *Wheeler v. Trans Union LLC*, 2021 WL 2290575 (C.D. Cal. June 4, 2021).

(rejecting assertion that the preexisting injunction conclusively established reasonable procedures, considering that the plaintiff's allegations concerned a "fact-intensive 'reasonableness' standard," and that "[i]t [was] too soon to decide as a matter of law that Experian's interpretation of its obligations under § 1681e(b) was not 'objectively unreasonable'" (quoting *Moran v. Screening Pros, LLC*, 25 F.4th 722, 728 (9th Cir. 2022)))).[5]

       Lastly, the parties quibble over the fact that Plaintiff did not give Trans Union notice of the inaccuracy before filing this suit. Trans Union argues the following, on the basis of lack of notice: Given that Trans Union used purportedly reasonable procedures when reporting Plaintiff's Wells Fargo account (*see* rejected arguments above), it cannot be liable under the FCRA, because any remaining liability on a reasonable-procedures claim would require it to have disregarded a notice of inaccuracy from Plaintiff subsequent to the reasonably compiled, albeit erroneous, credit report, *see Henson*, 29 F.3d at 285, and because liability on a reasonable-reinvestigation claim would also require Plaintiff to have

---

[5] Regarding the third alleged alternative, Trans Union cannot prevail as a matter of law even though court dockets are a "presumptively reliable source." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994). That is because Plaintiff alleges that Trans Union misinterpreted the bankruptcy court docket, not that Trans Union parroted inaccurate information from the docket. *Compare* ECF No. 1 at PageID ## 12–14, 18, ¶¶ 52–65, 89–92, *with Henson*, 29 F.3d at 285 ("[A] credit reporting agency is not liable under the FCRA for reporting *inaccurate information* obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." (emphasis added)).

15

given notice of dispute, *see* 15 U.S.C. § 1681i(a)(1)(A).  *See* ECF No. 73-1 at PageID ## 852–56.  Of course, that argument is misplaced given that the court has rejected Trans Union's contention that Plaintiff's allegations are insufficient as a matter of law—leaving Plaintiff to prove her reasonable-procedures claim without having to show notice.[6]

Accordingly, Plaintiff's allegations state facts that are sufficient to support a cognizable "reasonable procedures" claim under the FCRA and are thus sufficient to defeat Trans Union's Motion.

///

///

///

///

///

///

---

[6] Although Trans Union's argument is incorrect, it is not frivolous enough to warrant sanctions under 28 U.S.C. § 1927, contrary to Plaintiff's assertion, *see* ECF No. 84 at PageID ## 927–28.  As suggested above, Trans Union's argument regarding lack of notice is not completely irrelevant, because notice could be required for a reasonable-procedures claim if Plaintiff's allegations did not establish a failure to follow reasonable procedures in compiling and issuing an initial, inaccurate report (the unreasonable procedure could be ignoring Plaintiff's notice and issuing additional, inaccurate reports).  Further, Trans Union's argument is directly relevant to the notice requirement for a reasonable-reinvestigation claim—Plaintiff has not asserted such a claim in her Complaint, but she could potentially amend her Complaint to include such a claim.  *See* ECF No. 73-1 at PageID ## 860–61 (Trans Union asking that its Motion be granted with prejudice because "Plaintiff's Complaint is incurably flawed [and] any amendment to it would be futile").  Plaintiff's request for sanctions under 28 U.S.C. § 1927 is thus denied.

## III.  CONCLUSION

For the foregoing reasons, Trans Union's Motion, ECF No. 73, which encompasses both a Motion to Dismiss for Lack of Subject Matter Jurisdiction and a Motion for Judgment on the Pleadings, is DENIED.  Plaintiff's Request for § 1927 Sanctions in her Opposition brief, *see* ECF No. 84 at PageID ## 927–28, is also DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 4, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Leslie v. Experian Info. Sols., Inc. et al.*, Civ. No. 21-00334 JMS-RT, Order Denying Defendant Trans Union's Amended Motion for Judgment on the Pleadings, ECF No. 73