IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASHLEY LESLIE,<br><br>                    Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br><br>                    Defendants. | CIV. NO. 21-00334 JMS-RT<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 121, AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 117 |

## ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 121, AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 117

## I.  INTRODUCTION

In this Fair Credit Reporting Act ("FCRA") case, Ashley Leslie ("Plaintiff") alleges that consumer reporting agency ("CRA")[1] Experian Information Solutions, Inc. ("Experian" or "Defendant") violated § 1681e(b) of the FCRA.  Under the statute, only negligent or willful violations are actionable.  *See* 15 U.S.C. §§ 1681n, 1681o.  Although Plaintiff has failed to demonstrate that

---

[1]  A consumer reporting agency includes "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

Defendant *willfully* violated § 1681e(b), there is a genuine issue of material fact as to whether Plaintiff *negligently* violated the provision.  Accordingly, the court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment, ECF No. 121 and DENIES Plaintiff's Motion for Summary Judgment, ECF No. 117.

## II.  <u>BACKGROUND</u>

### A.    **Factual Background**

This case centers on Plaintiff's allegation that Experian inaccurately reported the status of a car loan that she obtained from Wells Fargo Dealer Services (hereinafter, "Wells Fargo" or "WFDS")[2] as open and current when in fact it had been discharged in bankruptcy.

On June 1, 2019, Plaintiff purchased a car financed through Wells Fargo.  ECF No. 118-1.  Plaintiff then filed a "no asset" Chapter 7 Bankruptcy on August 4, 2020.  *See* United States Bankruptcy Court for the District of Hawaii, Case No. 20-00924.  On November 10, 2020, Plaintiff received an order of Bankruptcy Discharge, ECF No. 118-2, and the next day, Plaintiff signed a voluntarily surrender of her vehicle.  ECF No. 118-3 at PageID.1141.  Nevertheless, a March 16, 2021 Experian credit report showed the Wells Fargo

---

[2]  Wells Fargo is a furnisher, "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."  12 C.F.R. § 1022.41.

account, as of July 2020, with a balance of $4,944, 15% of the loan as paid off, and a monthly payment of $151.  ECF No. 118-4 at PageID.1151.

Wells Fargo's records show the following history:  On October 6, 2020, Wells Fargo sent to Experian Plaintiff's tradeline[3] reflecting a Consumer Information Indicator ("CII") of "A,"[4] a code indicating that the account was included in a Chapter 7 bankruptcy.  ECF No. 155-1 at PageID.3339.  On October 7, 2020, however, Wells Fargo instructed Experian "not to process the Auto tradeline that was submitted [and that] a revised file would be submitted for CRAs to process."  *Id.* at PageID.3331.  Wells Fargo did not provide another reporting update containing information about Plaintiff's account until June 2021 when it instructed Experian to close the account.  *Id.* at PageID.3342; *see also* ECF No. 143 at PageID.2533.[5]

---

[3]  "A tradeline is a term used by credit reporting agencies to describe credit accounts listed on your credit report.  For each account you have, there is a separate tradeline, which includes information about the creditor and the debt."  Experian, "What are Tradelines?," https://www.experian.com/blogs/ask-experian/what-are-tradelines/ (last visited August 4, 2023).

[4]  The Credit Reporting Resource Guide—an authoritative technical manual for the reporting of consumer credit information by data furnishers—instructs data furnishers, like Wells Fargo, to report a CII of "A" when an account is included in Chapter 7 bankruptcy and a CII of "E" when an account is discharged in bankruptcy.  ECF No. 144-7 at PageID.2619–2620.

[5]  According to Wells Fargo's records, a September 5, 2020 tradeline also reflected a CII of "A," but that tradeline was never transmitted to Defendant.  ECF No. 155-1 at PageID.3338.  After October 6, 2020, Wells Fargo's tradelines for 10/08/2020, 01/05/2021, 02/05/2021, 03/05/2021, 04/06/2021, and 05/05/2021 all reflected the notation "Removed and Not Transmitted," meaning that the records were not provided to Defendant.  *Id.* at PageID.3339–3342.  A June 5, 2021 tradeline was transmitted to Defendant and reflected a CII of "A."  *Id.* at PageID.3342.

Plaintiff's Bankruptcy Discharge states that, "[m]ost debts are covered by the discharge, but not all."  ECF No. 126-2 at PageID.1521.  There are numerous statutory exceptions to bankruptcy discharge.  *See* 11 U.S.C. §§ 523, 524(c).  For example, "[a]mong the exemptions, 'debts covered by a valid reaffirmation agreement are not discharged.'  A reaffirmation agreement allows a debtor and creditor to maintain the debt, post-bankruptcy."  *Forslund v. Experian Info. Sols., Inc.*, 2022 WL 5249651, at *1 (D. Minn. Oct. 6, 2022) (internal citation omitted).  Thus, a bankruptcy discharge does not always close an account or prevent a consumer from continuing to make payments on a discharged debt.  And auto loan accounts are among those accounts that some consumers continue to make payments on despite a bankruptcy discharge.  *See* In re Dumont, 581 F.3d 1104, 1108 (9th Cir. 2009).

When Experian learns of a Chapter 7 discharge, it implements a bankruptcy "scrub" procedure as outlined in a class action settlement in *White v. Experian Info. Sols., Inc*., 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) (the "*White* Order").  The *White* Order provides, in pertinent part, that Experian shall "assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies based on the statistical likelihood of discharge of these categories of debt, and without either the affected creditors or

Consumers reporting the debt to Defendants as having been discharged." *White*,

2008 WL 11518799, at *13, ¶ 5.1.

But Experian must exclude certain debts from the scrub procedure.

Relevant here, the *White* Order excludes from the scrub procedure "Current Status"

accounts, that is, an "account status or rating indicating that, as of the date of last

reporting, there is no outstanding, overdue, and delinquent balance currently due."

*Id.* at *5, ¶ 2.10; id. at *10, ¶ 3.2(b)(ii)(E).  "Prior to March 2021, the scrub

procedures did not update debts that were less than 91 days delinquent.  In addition

to the initial scrub procedure, Experian conducts periodic 'look-back' scrubs, using

the same criteria, for 18 months following a bankruptcy discharge." *Forslund*,

2022 WL 5249651, at *2 (footnotes and internal citations omitted).

## B.   Procedural Background

On August 5, 2021, Plaintiff sued Experian for violating the FCRA.

ECF No. 1.  The Complaint alleges that Experian's inaccurate reporting of the

Wells Fargo account was at least a partial cause of Plaintiff being "extend[ed] less

favorable credit terms" by financial institutions and being "denied a Discover

[credit] card."  *Id*. at PageID.16 at ¶ 78; *see also id.* at ¶ 80 (alleging, more

generally, that Plaintiff was harmed through "a decreased credit score" and "lower

overall creditworthiness").  The inaccurate reporting also allegedly caused Plaintiff

to suffer emotional distress, including anger, embarrassment, and anxiety. *Id*. at

PageID.17 at ¶ 81.

On October 6, 2021, Experian filed a Motion to Dismiss. ECF No.

27. On December 16, 2021, the court issued an Order Staying Proceedings, to

determine whether the Ninth Circuit would find claims—similar to Plaintiff's—

collaterally estopped by the *White* Order. ECF No. 55. On May 09, 2022, the

court lifted the stay following the Ninth Circuit's holdings in *Wheeler* and

*Hernandez* which determined that plaintiffs were not estopped from filing FCRA

claims, despite the *White* Order.[6] ECF No. 58. On May 13, 2022, Experian's

Motion to Dismiss was withdrawn without prejudice. ECF No. 61.

On May 12, 2023, Plaintiff filed a Motion for Partial Summary

Judgment, ECF No. 117, and Experian filed a Motion for Summary Judgment,

ECF No. 121, with supporting memoranda, concise statements of fact, and

exhibits. ECF Nos. 122, 124, 125, 126, 127. On May 26, 2023, Plaintiff filed an

Opposition to Experian's Motion. ECF No. 134. On June 26, 2023, Experian filed

an Opposition to Plaintiff's Motion. ECF No. 143. A hearing was held on July 17,

2023.

---

[6] Thus, Plaintiffs are "not collaterally estopped from asserting that Experian's post-bankruptcy credit reporting procedures violate § 1681 based on the settlement order in *White*." *Wheeler v. Experian Info. Sols., Inc*., 2022 WL 1315301, at *1 (9th Cir. May 3, 2022). And the procedures the *White* Order outlines do not "'conclusively' comply with the FCRA in the post-bankruptcy credit reporting context." *Hernandez v. Experian Info. Sols., Inc*., 2022 WL 1315306, at *1 (9th Cir. May 3, 2022).

### III.  <u>STANDARD OF REVIEW</u>

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotation marks omitted).  If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial.  *Id.* at 322–23.

To preclude summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  The court "draw[s] all justifiable inferences in favor of the nonmoving party, including questions of credibility and

of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). If "direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## IV. <u>DISCUSSION</u>

### A.    A § 1681e(b) Reasonable Procedures Claim

Congress enacted the Fair Credit Reporting Act in 1970 to promote the accuracy, fairness, and privacy of information in the files of consumer reporting agencies while also satisfying the important commercial need for consumer reports. 15 U.S.C. § 1681; *see TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). Here, plaintiff alleges a violation of 15 U.S.C. § 1681e(b), which provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

The FCRA, however "does not impose strict liability." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Instead, "[u]nder the FCRA, only negligent or willful violations are actionable." *Marino v. Ocwen Loan Servs. LLC*, 978 F.3d 669, 671 (9th Cir. 2020); *see also* 15 U.S.C. §§ 1681n, 1681o. Thus, a court generally applies a two-step framework, asking:

(1) whether the defendant violated the FCRA; and (2) whether any violation was negligent or willful.  *See, e.g., Marino*, 978 F.3d at 673–74.  But the court can skip the first step and proceed directly to the second because the issue of negligence/willfulness can be dispositive.  *Id*. at 674.

### 1.   *Negligent Violations of § 1681e(b)*

A negligent violation of § 1681e(b)[7] consists of five elements: (1) the defendant included inaccurate information in a plaintiff's credit report;[8] (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the defendant acted pursuant to an objectively unreasonable interpretation of the statute; (4) the plaintiff suffered injury; and (5) the plaintiff's injury was caused by the inaccurate entry.  *See Moran*

---

[7]  The FRCA provision permitting recovery for negligent violations, 15 U.S.C. § 1681o, states:

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>> (1) any actual damages sustained by the consumer as a result of the failure; and
>>
>> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

[8]  "Inaccurate information" can be that which is "patently incorrect" or is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw v. Experian Info. Sols., Inc*., 891 F.3d 749, 756 (9th Cir. 2018) (internal citations omitted); *see also Wheeler*, 2022 WL 1315301, at *1.  And § 1681e(b) liability does not require that the inaccuracy be reported to a third party; an unreported inaccuracy is sufficient to violate § 1681e(b).  *Guimond*, 45 F.3d at 1333.

*v. Screening Pros, LLC*, 25 F.4th 722, 728 (9th Cir. 2022); *Hernandez v. Experian Info. Sols., Inc*., 2022 WL 1315306, at *1 (9th Cir. May 3, 2022); *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (quoting *Philbin v. Trans Union Corp*., 101 F.3d 957, 963 (3d Cir. 1996)); *see also Wilson v. Equifax Info. Servs*., 2006 WL 8434303, at *5 (C.D. Cal. Oct. 25, 2006); *Haykuhi Avetisyan v. Experian Info. Sols., Inc*., 2016 WL 7638189, at *7 (C.D. Cal. June 3, 2016); *Mader v. Experian Info. Sols., LLC*, 2020 WL 4273813, at *2 (S.D.N.Y. July 24, 2020); *Jones v. Realpage, Inc*., 2021 WL 852218, at *3 (N.D. Tex. Jan. 27, 2021).[9]

"Actual damages" include recovery for emotional distress under the FCRA. *Guimond*, 45 F.3d at 1332–33; *see also Drew v. Equifax*, 690 F.3d 1100, 1109 (9th Cir. 2012). And "Ninth Circuit law does not require substantial or even objective evidence to support emotional distress—a plaintiff's testimony alone may suffice." *Troy v. Equifax Info Servs. LLC*, 2021 WL 5998518, at *5 (D. Ariz.

---

[9] The court distills these five elements from the cases cited above. For instance, without discussing all of the elements of a negligent violation of the FCRA, the Ninth Circuit has held that "[t]o prove a negligent violation [of the FCRA], a plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute." *Moran*, 25 F.4th at 728 (quoting *Marino*, 978 F.3d at 673–74). But the Third Circuit does not appear to require a showing that the defendant acted pursuant to an objectively unreasonable interpretation of the statute—instead, "[n]egligent noncompliance with FCRA § 1681e(b) consists of four elements: '(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'" *Bibbs*, 43 F.4th at 342 (quoting *Philbin v. Trans Union Corp*., 101 F.3d 957, 963 (3d Cir. 1996)). The court's five-part test takes into account the *Moran* negligence requirement, along with the requirements to prove a violation of § 1681e(b) and a plaintiff's injury.

Dec. 20, 2021) (citing *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 513 (9th Cir. 2000)).

It is not enough, however, for a plaintiff to show she suffered emotional distress; she must prove that the reporting inaccuracy *caused* the alleged harm. *See e.g.*, *Pettus v. TRW Consumer Credit Serv.*, 879 F. Supp. 695, 698 (W.D. Tex. 1994).[10]  A plaintiff must offer "sufficient evidence of the entire context in which the FCRA violation occurred, what the emotional injuries were, and how they were caused by the FCRA violation." *Troy,* 2021 WL 5998518, at *5 (alterations and internal quotation marks omitted).  Accordingly, many district courts have determined that to "survive summary judgment on an emotional distress claim under the FCRA, Plaintiff must submit evidence that reasonably and sufficiently explains the circumstances of [her] injury and does not resort to mere conclusory statements." *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1102 (N.D. Cal. 2016) (internal citation omitted).[11]

---

[10]  *See also Matise v. Trans Union Corp.*, 1998 WL 872511, at *7 (N.D. Tex. Nov. 30, 1998) (requiring a plaintiff to show that the inaccurate information contained in a CRA-defendant's report, "rather than other lines in the [defendant's] report or a report from a different CRA, caused his injury"); *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1366 (N.D. Ga. 2005) (violation must have been a "substantial factor" in causing the injury); *Reeves v. Equifax Info. Servs.*, LLC, 2010 WL 2036661, at *6 (S.D. Miss. May 20, 2010) (the violation must be the proximate cause of the plaintiff's injury).

[11]  *See also Peterson v. Experian Info. Sols., Inc.*, 2021 WL 3116073, at *4 (D. Minn. July 22, 2021), *aff'd sub nom. Peterson v. Experian Info. Sols.*, 44 F.4th 1124 (8th Cir. 2022) (same); *Centuori v. Experian Info. Sols., Inc.,* 431 F. Supp. 2d 1002, 1010 (D. Ariz. 2006) (same); *Gao v. Campus 150 Venture II, LLC,* 2022 WL 294749, at *6 (C.D. Cal. Jan. 31, 2022) (continued . . . )

## 2. *Willful Violations of § 1681e(b)*

To establish a "willful" violation of § 1681e(b), a plaintiff must demonstrate that the defendant either knowingly or recklessly violated the statute. *See* 15 U.S.C. § 1681n; *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57–59 (2007).[12]

Furthermore, "a company subject to FCRA does not act in reckless disregard of it unless [(1)] the action is not only a violation under a reasonable reading of the statute's terms, but [also (2)] shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that

---

(same); *Benjamin v. Experian Info. Sols., Inc.,* 561 F. Supp. 3d 1330, 1344 (N.D. Ga. 2021) (same).

[12] The FRCA provision permitting recovery for willful violations, 15 U.S.C. § 1681n, states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> > (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> >
> > (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> >
> > (2) such amount of punitive damages as the court may allow; and
> >
> > (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

was merely careless." *Safeco*, 551 U.S. at 69.  And a violation is not willful "where a defendant followed an interpretation that could reasonably have found support in the courts." *Benjamin v. Experian Info. Sols., Inc.*, 2022 WL 1690539, at *4 (N.D. Ga. Mar. 21, 2022).[13]  This is an objective inquiry, and the defendant's subjective intent is irrelevant.  *Safeco*, 551 U.S. at 70 & n.20.

## B.    Analysis

Plaintiff has failed to meet her burden to show that Experian acted *willfully* but has raised a genuine issue of material fact as to whether Experian acted *negligently*.  Further, although Plaintiff has provided sufficient evidence as to some of her alleged injuries, she has not as to others.[14]

### 1.    *Willfulness Claim*

To find that a defendant acted in "reckless disregard" of the FCRA, its actions must run "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

---

[13]  Accordingly, several courts have found that "reliance on the procedures approved in *White* establishes that Experian's reporting was not willful or reckless." *Peterson v. Experian Info. Sols. Inc.*, 2021 WL 3116073, at *4 (D. Minn. July 22, 2021); *Coleman v. Experian Info. Sols., Inc.*, 2023 WL 2366609, at *14 (N.D. Ga. Feb. 6, 2023).

[14]  Experian does not argue in its Motion for Summary Judgment that Plaintiff cannot meet her burden to show that the March 16, 2021 credit report did not contain inaccurate information.  ECF No. 127.  The court thus assumes, for the purposes of Defendant's Motion for Summary Judgment, the report contained inaccurate information.  Regardless, even if the Defendant had raised the issue, the court would nevertheless find a genuine issue of material fact as to whether the report was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions," thereby satisfying the inaccurate information inquiry.  *Shaw*, 891 F.3d at 756.

Here, contrary to Plaintiff's claim, the evidence presented to the court demonstrates that Defendant followed the *White* Order and Plaintiff has presented no other evidence to demonstrate that Defendant acted in reckless disregard of § 1681e(b).  *See Peterson*, 2021 WL 3116073, at *4 ("reliance on the procedures approved in *White* establishes that Experian's reporting was not willful or reckless").

Specifically, Wells Fargo retracted its October 2020 instruction to report Plaintiff's account with a CII of "A" and as a result, Experian continued to report the account as "current" due to its last transmitted status from August 2020. ECF No. 155-1 at PageID.3338.  That tradeline reported the account as current, with the last payment being made in July 2020, and with a current balance of $4944 and a monthly scheduled payment amount of $151.  *Id*.  Because this August 2020 report showed that the loan was in "current status," and because Experian was not otherwise told that the Wells Fargo loan was actually discharged in bankruptcy, the *White* Order instructs Experian *not* to assume that the loan was discharged in bankruptcy.  *White*, 2008 WL 11518799, at *5.

Applying this *White* Order framework is not only not "merely careless" but also reflects the reality that there are exceptions to discharge, *see* 11 U.S.C. § 523, and that consumers can, and often do, reaffirm or redeem debts that are current at the time of the bankruptcy filing, despite a CII of "A."  11 U.S.C.

§§ 524, 722; *accord Rydholm v. Equifax Info. Servs. LLC,* 44 F.4th 1105, 1109 (8th Cir. 2022).  Although now 15 years old, the *White* Order's procedures are nevertheless carefully designed to increase the accuracy of post-bankruptcy credit reporting while minimizing the harm to consumers that results from incorrectly assuming that a debt is discharged in bankruptcy.  *White,* 2008 WL 11518799, *13–14.  Experian followed the procedures set forth in *White* and did not engage in a *willful* violation of §1681e(b).

And to be clear, the court is not finding that compliance with the *White* Order will always—regardless of the facts—provide a safe harbor or result in a determination of non-willfulness.  Instead, under the facts presented here, the court determines that Experian complied with the *White* Order and Plaintiff has not otherwise shown any issue of fact as to whether Experian knowingly or recklessly violated § 1681e(b).

### 2.    *The Negligence Claim*

#### a.  *Was Wells Fargo an unreliable source of information?*

There is a genuine issue of material fact as to whether Defendant was negligent when relying on data furnished by Wells Fargo.[15]  It "is unreasonable for

---

[15]  Defendant argues that it could not have acted in an "objectively unreasonable" manner as a matter of the law, because "[u]nder either the negligence or willfulness standard, when the applicable language of the FCRA is 'less than pellucid'", "a defendant will nearly always avoid liability so long as an appellate court has not already interpreted that language."  ECF No. 127 at PageID.1787 (citing to *Marino*, 978 F.3d at 673–74).  Although this rule makes sense in the
(continued . . . )

a credit reporting agency to not 'look beyond information furnished to [it] when . . . [that information] comes from an unreliable source.'" *Leslie v. Experian Info. Sols., Inc.*, 2022 WL 3106700, at *5 (D. Haw. Aug. 4, 2022) (quoting *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239–40 (10th Cir. 2015) (collecting cases)).  And "a reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable," and nonetheless reports such information.  *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021); *Sarver v. Experian Info. Sols*., 390 F.3d 969, 972 (7th Cir. 2004).  As the Federal Trade Commission ("FTC") Commentary provides:

> If a consumer reporting agency accurately transcribes, stores, and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate.

16 C.F.R. Part 600, 391.  Accordingly, CRAs generally have not been found to be negligent if they report information from a reliable data furnisher.[16]

---

context of *Marino's* discussion of § 1681b(f)(1) (forbidding a person from obtaining a consumer credit report without a permissible purpose), it does not apply to § 1681e(b), which requires a fact-intensive "reasonableness" inquiry.  *See Wheeler*, 2022 WL 1315301, at *1.  For this reason, "the overwhelming majority of cases" involving § 1681e(b) reasonable procedures claims are decided by a jury.  *Guimond*, 45 F.3d at 1333.

[16]  Thus, summary judgment on a § 1681e(b) claim "is . . . proper if the undisputed evidence shows that a [CRA] followed reasonable procedures in reporting consumer information

(continued . . . )

Plaintiff, here, however, argues that Experian had actual knowledge that Wells Fargo was not a reliable furnisher of bankruptcy information, and that "Experian's maintained Metric Report[17] on WFDS clearly indicates that WFDS should not [have been] trusted to update accounts included in bankruptcy."  ECF No. 117 at PageID.1058.

Plaintiff has presented evidence that Experian had actual notice that Wells Fargo reported nearly 20,000 accounts with various bankruptcy-related codes in July 2020 (out of 3,309,793 records submitted), ECF No. 159-1 at PageID.3691–3693, but *none* in the months of August (out of 3,064128 records submitted), *id*. at PageID.3800–3801, and September (out of 3,151,859 records submitted), ECF No.159-2 at PageID.3836–3837, and only 12 accounts with

---

that was both credible on its face[] and obtained from a source the reporting agency reasonably believed to be reliable."  *Ghazaryan v. Experian Info. Sols., Inc*., 2017 WL 5957640, at *3 (C.D. Cal. Jan. 4, 2017), *aff'd*, 740 F. App'x 157 (9th Cir.2018); *accord Losch*, 995 F.3d at 945 & n.6; *Sarver*, 390 F.3d at 972; *Rydholm*, 44 F.4th at 1108–09; *Henson v. CSC Credit Servs*., 29 F.3d 280, 285–86 (7th Cir. 1994); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080–81 (D. Or. 2007); *Darrin v. Bank of Am., N.A*., WL 1922819, at *6–7 (E.D. Cal. May 14, 2014); *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1067–68 (C.D. Cal. 2014); *see also Goz ex rel. Est. of Travers v. Allied Collection Servs., Inc.,* 812 F. App'x 544, 546 (9th Cir. 2020).

[17]  The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2® Format.  *See* Consumer Data Industry Association, "Metro 2® for Credit Reporting," https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/ (last visited August 4, 2023). And a "Metric Report™, a comprehensive summary of Metro 2® submissions, helps data furnishers identify and correct tradeline inaccuracies. Metric Report allows data furnishers to meet their Fair Credit Reporting Act (FCRA) obligations while enhancing the customer experience and increasing operational efficiencies."  Experian, "Metric Report™," https://www.experian.com/business/products/metric-report (last visited August 4, 2023).

bankruptcy-related codes in October 2020 (out of 2,972,984 records submitted),

ECF No. 140-1 at PageID.2299–2300.  Given these obvious discrepancies, there is

an issue of fact as to whether Defendant should have known that Wells Fargo was

not updating bankruptcy accounts correctly.

Defendant, in turn, claims the opposite—that Wells Fargo's reported

nearly three million accounts in October 2020, but had a fatal error percentage of

0.03%, well below the industry average fatal error rate of 0.27–0.36% for

automotive loans.  ECF No. 140-1 at PageID.2299–2301.

The court is unable to draw a conclusion from these apparent

contradictory metric reports.  Defendant's attempt to do so during oral argument

included just that—argument, not evidence.  ECF No. 167.  In short, when viewing

the evidence in the light most favorable to the non-moving party (the Plaintiff with

respect to Defendant's Motion), there is a genuine issue of material fact as to

whether Defendant was negligent in its inclusion of the auto loan in the March 16,

2021 credit report.

### b. Did Plaintiff suffer any damages?

Plaintiff claims two types of actual damages: economic and

emotional.  ECF No. 1 at PageID.20.  It is clear from the record that Plaintiff did

not suffer an economic injury.  The undisputed evidence establishes that the one

credit denial Plaintiff complains of—the Discover credit card denial—was not the

result of Experian's continued reporting of the Wells Fargo account.  *See* ECF No.

126-5 at PageID.1549 (Declaration of Vice President of Analytics and Credit

Strategy for Discover Financial Services) ("Discover was unable to approve Ms.

Leslie's application due to the status of an existing or prior Discover Card

account," and the "existence of Ms. Leslie's Wells Fargo Dealer Services Account

. . . on her credit report was not the basis for, or the cause of, the denial of her

January 18, 2021, credit application with Discover.")  Accordingly, Experian is not

liable for this decision by Discover Card.  Thus, the court GRANTS Defendant's

Motion for Summary Judgment, as to any alleged damages from the denial of the

Discover credit card.  ECF No. 127 at PageID.1793–1795.[18]

---

[18]  In her opposition to Defendant's Motion for Summary Judgment, Plaintiff claims that granting summary judgment on economic damages is premature because there are "currently six outstanding subpoenas to various entitles listed as having 'Viewed [Ms. Leslie's] Consumer Information' on Experian's March 16, 2021, credit report.'"  ECF No. 134 at PageID.1866 (quoting ECF No. 118-4 at PageID.1151–1152).  The court rejects this argument.  First, as Defendant points out, three of the six entities provided responses that are of no help to Plaintiff. *See* ECF No. 149 at PageID.3267–3268; ECF Nos. 150-2, 150-3, and 150-4.  Further, Plaintiff has not satisfied (or, apparently, even attempted to satisfy), the requirements of Federal Rule of Civil Procedure 56(d).  Under that rule, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  And to prevail under Rule 56(d), a party must show that: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."  *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619–20 (9th Cir. 2017) (citation omitted).  Here, Plaintiff has provided no declaration, nor explained how these outstanding subpoena requests could provide evidence to show economic harm.  For example, although Plaintiff states that these entities viewed her Experian credit report, she never claims that she sought or was denied credit from any of these entities.

Plaintiff claims two types of emotional distress damages.  First, she claims that as a result of the March 16, 2021 report she experienced stress, was overwhelmed, became impatient with her children, and "felt like I was just carrying a heavy burden on my shoulders."  ECF No. 135-10 at PageID.2101–2012.  She further claimed that she suffered from anxiety and loss of sleep.  ECF No. 126-4 at PageID.1538.  But Plaintiff also alleges that she suffered physical manifestations resulting from her stress, stating in her deposition that "[t]here was an increase in my migraines, probably due to the stress. . . . I do suffer from sciatica or sciatica nerve pain, and that pain became more frequent."  ECF No. 135-10 at PageID.2102.

As to emotional distress alone (stress, impatience, anxiety, etc.), there is a genuine issue of material fact as to whether Experian's inaccurate reporting caused Plaintiff's emotional distress.  *See Gao v. Campus 150 Venture II, LLC*, 2022 WL 294749, at *6 (C.D. Cal. Jan. 31, 2022) ("Courts have found sufficient detail in plaintiffs' testimony where, for example, plaintiffs testify as to specific forms and manifestation of mental distress.").  And although a close question, the court rejects Defendant's claim that Plaintiff's descriptions of her emotional distress "are insufficient to establish actual damages" because they are too conclusory.  ECF No. 127 at PageID.1795–1798.  Viewing the facts in the light most favorable to the Plaintiff, she presented sufficient evidence that she suffered

emotional distress because of Experian's continued reporting of the Wells Fargo account on her credit report.  And the court must treat her statements about the emotional distress, even if they appear to lack credibility, as true for the purposes of Defendant's Motion for Summary Judgment.  In other words, such credibility issues are for the jury, not the court.  *See e.g.*, *McLaughlin v. Liu,* 849 F.2d 1205, 1207–08 (9th Cir. 1988).

But the court agrees with Defendant that Plaintiff has failed to support her claim that physical symptoms—including migraines and sciatica—resulted from her emotional distress (which, in turn, resulted from the auto loan inaccuracy in the May 16, 2021 credit report).

Whether medical testimony is required to establish a causal link between an event and a physical injury depends on whether the connection between the two is apparent from the injury and its circumstances.  *See Rangasan v. Hawaiian Tug & Barge Corp*., 2000 WL 1569285, at *3 (D. Haw. Apr. 6, 2000). As explained in *Rangasan*, if a person falls, is immediately x-rayed, and a fracture is discovered, no medical testimony is required to prove causation.  But where a causal link is not "readily apparent to a lay person," medical testimony is required to establish causation.  *Id*.  Thus, an expert is not required where "no special expertise [is] necessary to draw a causal inference," but expert testimony is required if making the connection between the act and the injury requires

specialized knowledge.  *Claar v. Burlington N. R. Co*., 29 F.3d 499, 504 (9th Cir.

1994); *see also Wills v. Amerada Hess Corp*., 379 F.3d 32, 46 (2d Cir. 2004)

("[W]here an injury has multiple potential etiologies, expert testimony is necessary

to establish causation.").  Further, "courts have noted that whether a stressful

incident caused a flare-up in a preexisting condition is not within a jury's

competence to judge without expert causation testimony."  *Llewellyn v. Ocwen

Loan Servicing, LLC*, 2015 WL 2127892, at *3 (D. Colo. May 5, 2015) (citing

cases).  *See also Armstrong v. Hawaiian Airlines, Inc*., 2019 WL 13162437, at *15

(D. Haw. Oct. 29, 2019*)*; *Layton v. Yankee Caithness Joint Venture*, L.P., 774 F.

Supp. 576, 580 (D. Nev. 1991); *Grigoryan*, 84 F. Supp. 3d at 1090 n.201; *Berry v.

Beauvais*, 2015 WL 5244892, at *4 (D. Colo. Sept. 9, 2015).

   Here, Plaintiff has failed to provide corroborating medical testimony

to support her claims that Experian's alleged inaccurate reporting increased her

migraine headaches or exacerbated her "sciatica."  In fact, the most Plaintiff could

offer is speculation—that the stress caused by the March 16, 2021 report

"probably" resulted in increased migraines.  ECF No. 135-10 at PageID.2102.  But

she also testified that the act of filing for bankruptcy itself—which impacted her

credit score—was also a cause of stress.  *Id*. at PageID.2078–2079.  And even

viewing the evidence in the light most favorable to Plaintiff, the connection

between these alleged physical manifestations and the alleged inaccurate report is

not apparent at all.  Accordingly, the court GRANTS Defendant's Motion for Summary Judgment, as to Plaintiff's alleged physical manifestations of her emotional distress injuries.

## V.  **CONCLUSION**

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment, ECF No. 121.  Further, the court DENIES Plaintiff's Motion for Partial Summary Judgment, ECF No. 117, in its entirety.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 4, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Leslie v. Experian Info. Sols., Inc. et al.*, Civ. No. 21-00334 JMS-RT, Order (1) Granting In Part and Denying in Part Defendant's Motion for Summary Judgment, ECF No. 121, and (2) Denying Plaintiff's Motion for Partial Summary Judgment, ECF No. 117